# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JHRG LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV919 |
| | ) | |
| STORMWATCH, INC. and MICHAEL MURRAY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION, RECOMMENDATION, AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court for an order on "Defendant Michael Murray's Objections to Statements of Fact in Plaintiff's Response to Murray's Motion to Dismiss" (the "Motion to Strike") filed by pro se Defendant Michael Murray ("Murray") (Docket Entry 22), as well as for a recommendation (pursuant to the Court's Amended Standing Order No. 30) on "Defendant Michael Murray's Amended Motion to Dismiss for Lack of Personal Jurisdiction" (Docket Entry 11) and "Defendant StormWatch's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction and Improper Venue" filed by Defendant Stormwatch, Inc. ("StormWatch" and, collectively with Murray, "Defendants") (Docket Entry 14). For the reasons stated herein, Defendant Murray's Motion to Strike (Docket Entry 22) is denied and it is recommended that Defendant Murray's motion to dismiss (Docket Entry 11) be denied and Defendant Stormwatch's motion to dismiss (Docket Entry 14) be denied as moot.

## I. BACKGROUND

### A. Factual Background

This action arises out of a Complaint by JHRG LLC ("JHRG") requesting a declaratory judgment of noninfringement, invalidity, and unenforceability as to United States Patent No. D599,487 (the "'487 Patent"), allegedly owned by or licensed to Defendants. (Docket Entry 1 at 4-6.) The Complaint alleges that Defendant Murray is "a citizen and resident of Florida, . . . the Executive Officer of Stormwatch, . . . the sole owner of Stormwatch, . . . the sole owner of [the '487 Patent], exercises absolute and complete control over Stormwatch, and is the named inventor of [the '487 Patent]." (Docket Entry 1 at 1-2.) According to the Complaint, "[Defendant StormWatch] is a Florida corporation with its principal place of business in Jupiter, Florida," which "is the exclusive licensee of [the '487 Patent] . . . ." (Docket Entry 1 at 1.)

Defendant Murray has averred that, "[b]efore moving to Florida [he] was a California resident." (Docket Entry 7 at 1.) He further has asserted that "[he is] an employee of [StormWatch]," which has its "corporate headquarters and primary place of business [] in Jacksonville, Florida." (Id. at 1-2.) In addition, Defendant Murray has sworn that "[he has] never conducted any personal business in North Carolina" or "solicited any personal business in North Carolina." (Id. at 2.) According to Defendant Murray's affidavit, "[he] own[s] no commercial or residential property in North Carolina." (Id.) Moreover, Defendant Murray has denied "purposely directed activities towards North Carolina . . .

-2-

other than having driven on the Interstate in North Carolina on an occasion or two . . . ." (Id.) Furthermore, Defendant Murray has reported that "[he] was served with the summons and portions of the complaint . . . in Florida." (Id.)

The Complaint further alleges that "[Plaintiff JHRG] is a North Carolina limited liability company with its principal place of business in Spring Hope, North Carolina." (Docket Entry 1 at 1.) Other allegations of the Complaint include that Plaintiff JHRG "is a manufacturer of high performance fabrics including an innovative line of fabric hurricane protection panels for use in protecting windows and doors, which are marketed under the STORM-A-REST trademark." (Id. at 2 (capitalization in original).)

John E. Holland ("Holland"), Plaintiff JHRG's President, has averred that "[o]ne of the options offered with JHRG's Storm-A-Rest hurricane shutters is the addition of Sunbrella® fabric as an option. The Sunbrella® fabric is attached to the hurricane shutter such that the hurricane shutter can match or coordinate with a customer's existing outdoor furniture or awnings." (Docket Entry 17 at 2.) Holland has sworn that "Sunbrella® fabric is a product of North Carolina based, Glen Raven, Inc. [("Glen Raven")]." (Id.) Furthermore, he has averred that "JHRG obtains the Sunbrella® fabric it uses from a [Glen Raven] company called, Tri Vantage" and that "Tri Vantage is a North Carolina company." (Id.)

On June 9, 2008, Defendant Murray sent a letter to Holland, on Defendant StormWatch's letterhead, which states in relevant part:

It came to my attention at the recent World of Hurricane Protections show at the Orange County Convention Center in Orlando, FL on April 25 & 26, 2008 that your company, JHRG LLC, has incorporated a decorative fabric cover to your Storm-A-Rest hurricane panels.

As our booths were across the aisle from each other, it must have been clear that these features of the Storm-A-Rest panel are obviously similar to the features on our StormWatch product line. Please be advised that the decorative features we show and the method of how they are used were developed by myself and are the intellectual property of myself personally, and utilized on the products produced by my company, StormWatch, Inc.

You probably are aware that the decorative feature was not an original idea to your company's product line, but probably [sic] not aware that we have filed patents to protect these features. Patents are pending on these features and when issued, you will receive a formal Cease and Desist notice.

Consider this letter formal notice that these features will infringe on our patents once issued and we will seek remedies as necessary to protect our intellectual property.

(Docket Entry 17, Ex. A at 1.)

On September 9, 2009, Defendant Murray, using letterhead of Defendant StormWatch, sent Holland another letter writing:

In a letter dated June 9, 2008 you were advised that your company's product Storm-A-Rest was producing, marketing and selling [sic] a hurricane shutter incorporating a decorative feature that was similar to a pending design patent for a decorative feature found on StormWatch fabric hurricane shutters.

Stormwatch [sic] is the licensee, by assignment of the owner, for US Patent #D599487, enclosed for your reference.

This letter gives notice to JHRG LLC that the design patent has been issued and the decorative features found on the Storm-A-Rest panels read on the claims of the above mentioned patent.

StormWatch is willing to discuss the possibility of providing JHRG LLC with a non-exclusive license. If you

-4-

are of the opinion that you do not need a license from StormWatch, it would be helpful if you could give some insight into your reasons. I look forward to hearing from you by September 25, 2009.

(Id., Ex. B at 1.)

On October 9, 2009, Defendant Murray, using Defendant StormWatch's letterhead, sent a letter to "Ron Holland" writing in pertinent part:

I am the Executive Officer for StormWatch, Inc. I created the decorative feature for a hurricane shutter, the patent was issued to me Sept. 1, 2009, and is currently licensed to my company StormWatch, Inc. Notice was given via mail to JHRJ [sic], LLC, who under the name Storm-A-Rest, is marketing manufacturing and selling nearly exact replicas of the aforementioned patent. No response has been received to my letter dated Sept. 9, 2009.

JHRJ [sic], LLC's use of the decorative features described in US PAT D599,487 constitutes patent infringement and unfair competition under federal and state law. These laws provide for substantial remedies, including injunctive relief and damages. Where the infringement is willful, infringers may also be liable for treble damages and attorneys' fees.

Accordingly, StormWatch demands that JHRJ [sic], LLC immediately cease and desist all use of the decorative feature for a hurricane shutter in connection with the advertising, marketing, distributing, offering for sale, or sale of shutters featuring a decorative panel. Further, StormWatch requires JHRJ [sic] to arrange for removal or retraction of any article, photograph, or web content where the decorative feature is shown in conjunction with JHRJ [sic] products. StormWatch requires immediate written assurance that JHRH [sic] is initiating this process and timely progress reports.

(Docket Entry 1, Ex. A at 1 (emphasis added).)

Holland has averred that Defendant Murray then communicated with Tri Vantage regarding Plaintiff JHRG as follows:

In early December of 2009, a representative [sic] Tri Vantage contacted JHRG concerning a communicated [sic] by

> Michael Murray/Stormwatch [sic] to Tri Vantage.  Tri
> Vantage's call to JHRG was directed to me.  The Tri
> Vantage representative informed me that Michael Murray
> had contacted Tri Vantage and wanted to know why Tri
> Vantage was selling Sunbrella® to JHRG.  <u>Michael Murray
> went on to tell Tri Vantage that he had patent rights
> over hurricane shutters with Sunbrella® fabric, that JHRG
> was infringing his patent, and that Tri Vantage should
> not be selling Sunbrella® fabric to JHRG.  Michael Murray
> also threatened a lawsuit.</u>

(Docket Entry 17 at 2 (emphasis added).)

Although Defendant Murray previously had filed an affidavit to address issues in the case (<u>see</u> Docket Entry 7), he did not offer a sworn response to Holland's foregoing averments; instead, Defendant Murray included only the following unsworn responsive allegations in his Reply:

> 1. All conversations between . . . [Tri Vantage] and
> Murray have occurred in the Lake Park, Florida
> distribution center or via telephone between the
> distribution center and Murray.
>
> 2. At no time did Murray state to Tri Vantage that he had
> patent rights over hurricane shutters with Sunbrella®
> fabrics.
>
> 3. At no time did Murray state to Tri Vantage that it
> should not sell Sunbrella® fabrics to [Plaintiff JHRG].
>
> 4. At no time did Murray convey a threat to sue
> [Plaintiff JHRG] in relation to enforcing his patent to
> Tri Vantage or anyone else.

(Docket Entry 21 at 2; <u>see also</u> <u>id.</u> at 5 ("[Defendant] Murray hereby denies Plaintiff's hearsay allegation that he contacted Tri Vantage for the purpose of extra judicial patent enforcement.").)

<u>B. Procedural Background</u>

The Complaint seeks a declaratory judgment that Plaintiff JHRG "has not infringed the ['487 Patent], and the ['487 Patent] is null,

void, invalid, and unenforceable." (Docket Entry 1 at 6.) Defendant Murray thereafter moved to dismiss for lack of personal jurisdiction. (Docket Entry 5.) He filed therewith a "Declaration of Meredith Anzulis in Support of Motion to Dismiss for Lack of Personal Jurisdiction" (Docket Entry 6) and a "Declaration of Michael Murray in Support of Motion to Dismiss for Lack of Personal Jurisdiction" (Docket Entry 7). Defendant Murray subsequently filed his instant Amended Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry 11),[1] and Defendant StormWatch filed its instant Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction and Improper Venue (Docket Entry 14).

Plaintiff JHRG responded to Defendant Murray's instant amended motion to dismiss (Docket Entry 16) and filed therewith an "Affidavit of John E. Holland" (Docket Entry 17), an "Affidavit of Victoria Sharpe" (Docket Entry 18), and a "Declaration of Robert D. Mason, Jr. in Opposition to Motion to Dismiss of Michael Murray" (Docket Entry 19). Defendant Murray thereafter replied (Docket Entry 21) and filed his instant Motion to Strike (Docket Entry 22). Instead of responding to Defendant StormWatch's motion to dismiss – and prior to the filing of any answer or summary judgment motion by Defendant StormWatch (see Docket Entries dated Dec. 2, 2009, to present; see also Fed. R. Civ. P. 41(a)(1)(A)(i)) – Plaintiff JHRG filed a "Notice of Voluntary Dismissal Without Prejudice of StormWatch, Inc." (Docket Entry 24.)

---

[1] The Clerk of Court placed an entry on the docket that Defendant Murray's amended motion terminated his original motion. (See Docket Entry Apr. 9, 2010.)

## II.  DISCUSSION

Initially, the Court will discuss Defendant Murray's Motion to Strike and then will address Defendants' motions to dismiss.

### A.  Motion to Strike

Defendant Murray has moved to strike portions of the affidavits and declaration that Plaintiff JHRG filed in response to Defendant Murray's motion to dismiss. (See Docket Entry 22 at 1-2.)[2]  In said filing, Defendant Murray requested that the Court strike part of Mason's declaration, because it "lacks the substantiating document to support the claims . . . ." (Id. at 1.) Additionally, Defendant Murray proposed that the Court strike a paragraph from Holland's affidavit as inadmissible. (Id. at 2.) Finally, Defendant Murray asked the Court to strike two paragraphs from Sharpe's affidavit, because the claims are "conclusory" and either "immaterial" or "irrelevant" or to strike Sharpe's affidavit entirely because it is "conclusory" and "immaterial." (Id. at 2.)

As authority for his motion to strike, Defendant Murray cites Federal Rule of Civil Procedure 12(f)(1). (See id. at 1-2.)  This Court must follow the precedent of the United States Court of Appeals for the Federal Circuit in "resolving issues intimately related to substantive patent law." Hanamint Corp., Inc. v.

---

[2] Plaintiff JHRG has not responded to Defendant Murray's Motion to Strike. (See Docket Entries from Apr. 8, 2010, to present.)  Because JHRG "fail[ed] to file a response within the time required by [this Court's Local Rule 7.3(f)], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."  M.D.N.C. R. 7.3(k).  In this case, however, the Court exercises its discretion to review the merits of Defendant Murray's Motion to Strike.

<u>Alliant Mktg. Grp., LLC</u>, 481 F. Supp. 2d 444, 449 (M.D.N.C. 2007) (Beaty, C.J.) (internal quotation marks omitted). The Federal Circuit has observed that "'[a] grant or denial of a motion to strike is not an issue unique to patent law, and [courts] therefore apply the law of the regional circuit' in deciding that question." <u>Acumed LLC v. Stryker Corp.</u>, 551 F.3d 1323, 1331 (Fed. Cir. 2008) (quoting <u>Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.</u>, 340 F.3d 1298, 1313 (Fed. Cir. 2003)).

Rule 12(f) provides that:

> The court may strike from a <u>pleading</u> an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> > (1) on its own; or
> >
> > (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f) (emphasis added). "Although the term 'pleading' is sometimes used loosely to refer to any filing in a court case, under the Rules 'pleading' is a term of art." <u>Deberry v. Davis</u>, No. 1:08CV582, 2010 WL 1610430, at *6 (M.D.N.C. Apr. 19, 2010) (unpublished) (citing Fed R. Civ. P. 7(a)); <u>see also</u> <u>General Tire & Rubber Co. v. Watkins</u>, 331 F.2d 192, 196 (4th Cir. 1964) (defining term "pleading" as used elsewhere in Rules by reference to Rule 7(a)). Rule 7, which describes permissible "pleadings," does not define affidavits and declarations as "pleadings." <u>See</u> Fed. R. Civ. P. 7(a).

The Court therefore will not strike the materials identified by Defendant Murray, but will consider his objections to such materials – to the extent relevant – in resolving the underlying motions to dismiss. See, e.g., McFadyen v. Duke Univ., ___ F. Supp. 2d ___, ___ n.9, 2011 WL 1260207, at *104 n.9 (M.D.N.C. 2011) (Beaty, C.J.) (finding "no need to strike the exhibits submitted [in support of a motion to dismiss] because a [m]otion to [s]trike under Rule 12(f) must be directed to a pleading, not an exhibit to a brief," but noting that Court would consider objections to exhibits raised in motion to strike in evaluating merits of underlying motion to dismiss); DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010) (Schroeder, J.) ("[The defendant] moves to strike [the plaintiff's] surreply brief. . . . Parties do not have the right to file a surreply. . . . Because Federal Rule of Civil Procedure 12(f) applies to pleadings, however, the court will not strike the surreply . . . ."); Deberry, 2010 WL 1610430, at *6 (declining to grant motion to strike under Rule 12(f) because challenged items did not lie within "pleadings" as defined by Rule 7(a), but observing that Court could consider arguments raised in motion to strike in carrying out its substantive review).

Accordingly, Defendant Murray's Motion to Strike (Docket Entry 22) is denied.

## B.  Defendant Murray's Motion to Dismiss

Defendant Murray requests that, pursuant to Rule 12(b)(2), the Court dismiss this action for lack of personal jurisdiction. (See Docket Entry 11.)

## 1.  Standard for Motion to Dismiss

This Court must follow the precedent of the Federal Circuit in "resolving issues intimately related to substantive patent law." Hanamint, 481 F. Supp. 2d at 449 (internal quotation marks omitted).  The Federal Circuit has declared that, in ruling on the existence of personal jurisdiction in a patent case, courts must "apply Federal Circuit law because the jurisdictional issue is intimately involved with the substance of patent laws." Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1328 (Fed. Cir. 2008) (internal quotation marks omitted).

Under Federal Circuit authority, where (as here) "the parties have not conducted discovery, the plaintiff need[s] only to make a prima facie showing that the defendants were subject to personal jurisdiction." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003) (internal quotation marks omitted). Moreover, in evaluating whether a plaintiff made such a prima facie showing, "the pleadings and affidavits are to be construed in the light most favorable to the plaintiff." Id. (internal quotation marks omitted).  In other words, "conflicts between the facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." Campbell Pet Co. v. Miale, 542 F.3d 879, 888 (Fed. Cir. 2008) (quoting with approval Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003)); accord Deprenyl Animal Health, Inc. v. University of Toronto Innovations Found., 297 F.3d 1343, 1347

(Fed. Cir. 2002) ("[T]he Tenth Circuit [has] explained that: 'when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing,' and that 'If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor' . . . . Federal Circuit law governs the resolution of this jurisdictional dispute, but it accords with Tenth Circuit law on this issue." (quoting <u>Behagen v. Amateur Basketball Ass'n of U.S.A.</u>, 744 F.2d 731, 733 (10th Cir. 1984), and citing <u>Graphic Controls Corp. v. Utah Med. Prods., Inc.</u>, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998)) (internal brackets omitted)).

Federal Circuit law also provides that "'[d]etermining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process.'" <u>Avocent Huntsville</u>, 552 F.3d at 1329 (quoting <u>Inamed Corp. v. Kuzmak</u>, 249 F.3d 1356, 1359 (Fed. Cir. 2001)). The North Carolina Supreme Court has held that, in enacting North Carolina's long-arm statute, North Carolina's "General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." <u>Dillon v. Numismatic Funding Corp.</u>, 291 N.C. 674, 676 (1977). Under such circumstances, the "jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process." <u>Avocent Huntsville</u>, 552 F.3d at 1329.

"'[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" <u>Id.</u> (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)) (brackets in original). Stated another way, "'there [must] be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' . . . '[A] defendant [may] not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" <u>Id.</u> (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958), and <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985), respectively).

"Consistent with these principles, the Supreme Court has drawn a distinction between 'specific' jurisdiction and 'general' jurisdiction." <u>Id.</u> at 1330. "To establish specific jurisdiction, a plaintiff must demonstrate that the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." <u>Id.</u> (internal citations and quotation marks omitted). "If the court concludes that those two conditions are satisfied, a third factor comes into play, i.e., whether the assertion of personal jurisdiction would comport with fair play and

substantial justice." <u>Campbell Pet</u>, 542 F.3d at 884-85 (internal quotation marks omitted).

With respect to the third prong of the specific jurisdiction test, the Federal Circuit has decided that "the sending of letters threatening infringement litigation is not sufficient to confer personal jurisdiction." <u>Silent Drive</u>, 326 F.3d at 1202. Instead, the Federal Circuit has held: "For the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." <u>Id.</u> The Federal Circuit has explained that those "other activities" must "relate in some material way to the enforcement or the defense of the patent[.]" <u>Avocent Huntsville Corp.</u>, 552 F.3d at 1336. "Examples of these 'other activities'" include "initiating judicial or extrajudicial patent enforcement with the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." <u>Id.</u> at 1334 (citations omitted).

"To establish the minimum contacts necessary to establish general personal jurisdiction, plaintiffs bear a higher burden. Specifically, where a plaintiff's claims do not arise out of or relate to the defendant's contacts with the forum State, '[a court] must explore the nature of the defendant's contacts with the forum State to determine whether they constitute continuous and systematic general business contacts.'" <u>Id.</u> at 1330 (quoting

-14-

<u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415-16 (1984)) (brackets and ellipses from original omitted).

2. <u>Analysis</u>

In support of his instant Motion to Dismiss, Defendant Murray argued that "this Court lacks general jurisdiction" (Docket Entry 12 at 6) and "does not have specific jurisdiction" (<u>id.</u> at 7).[3]  In particular, Defendant Murray contended that specific jurisdiction does not exist, because: (1) the "[C]omplaint is devoid of any allegation that [he] directed any of his activities or consummated any transaction in North Carolina" (<u>id.</u>);[4] (2) "Plaintiff's claims do not arise from [Defendant] Murray's forum related activities" (<u>id.</u>); and (3) "it would be unreasonable to exercise jurisdiction

_____

[3] Plaintiff JHRG does not assert that general jurisdiction exists (<u>see</u> Docket Entry 16 at 1-18); therefore, this Recommendation will not address that matter further.

[4] Plaintiff JHRG retained Womble Carlyle Sandridge & Rice, PLLC ("Womble") in connection with this dispute.  (Docket Entry 19 at 1.)  According to Victoria Sharpe ("Sharpe"), a Womble paralegal, she "was asked to contact [Defendant StormWatch], obtain information concerning the company's product offerings of fabric hurricane shutters, and attempt to order fabric hurricane shutters allegedly covered by [the '487 Patent]."  (Docket Entry 18 at 1.)  Sharpe has averred that, from October 20, 2009, to November 16, 2009, she communicated with Defendants StormWatch and Murray and with Meridith Anzulis, an employee of Defendant StormWatch, requesting information about Defendant Stormwatch's dealers in North Carolina and Defendant Stormwatch's hurricane shutters.  (<u>Id.</u> at 1-2; <u>see</u> <u>id.</u> Exs. B-N.)  According to Sharpe, on November 18, 2009, she placed an order for "two fabric hurricane window panels with Sunbrella® decorative covers[,]" which she received sometime thereafter.  (<u>Id.</u> at 2-3.)  Defendant Murray has argued that Sharpe's interaction with him (which he characterizes as unethical) "should not be considered."  (Docket Entry 12 at 7-8.)  Plaintiff JHRG has admitted that "[its] purchase of hurricane shutters is not even relevant to the minimum contacts analysis, and Plaintiff JHRG has never asserted that its purchase of hurricane shutters subjects Defendant Murray to personal jurisdiction."  (Docket Entry 16 at 15.)  This concession (and the absence of any request for sanctions) moots any need to consider further the parties' arguments about Sharpe's actions (<u>see</u> Docket Entry 12 at 7-9; Docket Entry 16 at 15).

over [him]" (id. at 10).  In addition, in his Reply, Defendant
Murray asserted that the Court should not consider Holland's
affidavit, because it constitutes "hearsay evidence . . . wholly
lacking of any indicia of reliability."  (Docket Entry 21 at 2-5.)

Plaintiff JHRG has responded that "personal jurisdiction
exists over [Defendant] Murray" (Docket Entry 16 at 2), because
"[he] sent a cease and desist letter" into and made "extra judicial
patent enforcement" actions affecting matters in the forum (id. at
13-14).  Alternatively, if the Court does not find that personal
jurisdiction exists, Plaintiff JHRG has requested "jurisdictional
discovery" (Docket Entry 16 at 17) or "transfer [of] this action
pursuant to 28 U.S.C. § 1406(a)" to the United States District
Court for the Middle District of Florida (id. at 17-18).

### a.  Holland's Affidavit

As a preliminary matter, the Court must assess whether the
above-quoted portion of Holland's affidavit recounting the report
he received from Tri Vantage about Defendant Murray's attempt to
block Plaintiff JHRG's receipt of materials for use in its
production of the alleged infringing product, see supra, pp. 5-6,
warrants consideration in the jurisdictional analysis.  Defendant
Murray contends that the averment in question "is wholly
inadmissible hearsay lacking any indicia of reliability" (Docket
Entry 21 at 2) and that "this Court should not consider [that]
hearsay" (id. at 3).  More specifically, Defendant Murray offered
the following critiques of the evidence in question:

Nowhere in Mr. Holland's affidavit does he allege that the Tri Vantage representative he spoke with was the same Tri Vantage representative that allegedly spoke to [Defendant] Murray. Nor does the affidavit identify the name of the representative who allegedly spoke to Mr. Holland. Further, the conversation conveniently occurred in "early December of 2009", while Plaintiff's Complaint was filed on December 2, 2009. Apparently Plaintiff would have this Court believe that it prepared its Complaint and filed it with the Court within mere hours of an alleged phone conversation with an anonymous Tri Vantage representative in which the anonymous representative informed Plaintiff of alleged extra judicial enforcement, assuming that "early December" is defined as either December 1 or 2.

(Id. at 4.)

The Federal Circuit previously has considered and has rejected the position that courts evaluating the existence of a prima facie showing of personal jurisdiction must ignore inadmissible hearsay:

Defendants next argue that the . . . Declaration [submitted by the plaintiff] cannot be considered [in resolving the defendants' motion to dismiss for lack of personal jurisdiction] because it is based on hearsay and thus inadmissible. However, defendants have not cited any authority in support of such a rule. And we are unaware of any, either in the Federal Rules of Civil Procedure or elsewhere.

Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1562 (Fed. Cir. 1994) (internal footnote omitted) (noting in omitted footnote that Rule 12(b) contains no admissibility requirement whereas Rule 56 does); see also Campbell Pet, 542 F.3d at 889 n.1 ("Although the defendants argue that hearsay evidence may not be admitted in connection with a motion to dismiss for lack of personal jurisdiction, this court has held that there is no strict

prohibition on a court's consideration of hearsay in connection with such a motion.").[5]

In light of the foregoing Federal Circuit authority, the Court should consider the relevant portion of Holland's affidavit in assessing whether Plaintiff JHRG has made a prima facie showing of specific jurisdiction in this Court as to Defendant Murray.

### b.  Specific Jurisdiction Three-Part Test

#### i.  First and Second Prongs (i.e., Purposeful Direction and Nexus)

Defendant Murray has admitted that he sent "notices and [a] cease-and-desist letter" to Plaintiff JHRG in "[his] capacity as the patent owner[,]" however, in Defendant Murray's view, such

---

[5] In Beverly Hills Fan, the Federal Circuit added that adoption of a rule against consideration of hearsay evidence "would be particularly inappropriate under the circumstances of th[a]t case since the evidence [at issue] bears circumstantial indicia of reliability so that it very well could be admissible at trial notwithstanding its hearsay nature." Beverly Hills Fan, 21 F.3d at 1562 (citing then-Fed. R. Evid. 803(24), now codified at Fed. R. Evid. 807). The language used by the Federal Circuit in this regard (i.e., "particularly inappropriate"), however, makes clear that it viewed a rule against consideration of hearsay evidence "inappropriate" without regard to the existence of sufficient indicia of reliability as to bring the evidence within the reach of the residual hearsay exception. Although one subsequent Federal Circuit decision focused on the language from Beverly Hills Fan regarding the reliability of the proffered hearsay, see Akro Corp. v. Luker, 45 F.3d 1541, 1546-47 (Fed. Cir. 1995) (citing Beverly Hills Fan for proposition that "hearsay 'bearing circumstantial indicia of reliability' may be admitted for purposes of determining whether personal jurisdiction obtains"), the Court has failed to locate any Federal Circuit authority explicitly limiting the declaration in Beverly Hills Fan that a rule against consideration of hearsay evidence – without regard to any finding as to reliability – lacks any basis in the Rules and would be inappropriate. Further, to the extent the reliability of the hearsay at issue represents a matter the Court need address at this stage, Defendant Murray's above-quoted objections do not persuasively establish that the evidence on which Plaintiff JHRG relies "lack[s] any indicia of reliability," as Defendant Murray contends (Docket Entry 21 at 2). Indeed, as previously noted, see supra, p. 6, Defendant Murray declined to offer any sworn contradiction on point.

letters do not represent "sufficient contacts to subject a defendant to personal jurisdiction." (Docket Entry 12 at 7-8.)

Federal Circuit authority supports that general position:

> [E]ven though cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts), the "minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction." [Burger King,] 471 U.S. at 477-78. Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-61 (Fed. Cir. 1998) (ellipses in original).

As other courts have recognized, however, the Federal Circuit's statement in this regard indicated that cease-and-desist letters into the forum fall short of establishing personal jurisdiction not under the first two prongs of the specific jurisdiction standard, but rather only on the third prong. See, e.g., Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1082 (10th Cir. 2008) (observing that, in Red Wing Shoe, "Federal Circuit held that [defendant's] 'cease-and-desist' letter constituted a contact purposely directed at [forum state], and that [plaintiff's declaratory judgment action] arose out of that contact"). Indeed, the Federal Circuit has made it clear that, in Red Wing Shoe, it determined that a patent-holder's cease-and-desist letters to an alleged infringer that cause the institution

of a declaratory judgment action do satisfy the "purposefully directed" and "arises out of" (or "nexus") prongs of the specific jurisdiction test. See Silent Drive, 326 F.3d at 1202.

Defendant Murray's motion to dismiss thus lacks merit to the extent it asserts that his cease-and-desist letter fails to satisfy the first two prongs of the specific jurisdiction test.

### ii. Third Prong (i.e., Reasonableness)

According to Defendant Murray, it would be "unreasonable to exercise jurisdiction" over him in this forum because "[he] did not interject himself in any way into North Carolina" (Docket Entry 12 at 10. Plaintiff JHRG, however, has argued that Defendant Murray's contact with non-party Tri Vantage represents "precisely the type of 'extra-judicial' enforcement of intellectual property rights that subjected non-resident defendants to specific personal jurisdiction in Campbell Pet, Dudnikov, and [Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082 (9th Cir. 2000)]." (Docket Entry 16 at 14.)

In Campbell Pet, the plaintiff filed an action against an out-of-state patentee "seeking a declaration of noninfringement and invalidity" with respect to two patents related to stretchers for animals. Campbell Pet, 542 F.3d at 881-82. The district court granted the defendant's motion to dismiss for lack of personal jurisdiction, but the Federal Circuit reversed, and, in so doing, focused its holding on the defendant's mailing of a cease-and-desist letter to the plaintiff and the defendant's "extra-judicial patent enforcement." Id. at 885-86. The "extra-judicial patent

enforcement" in question consisted of the defendant, through one of its owners, "attempt[ing] to have [the plaintiff's] allegedly infringing products removed from [a] convention and [the patentee telling the plaintiff's] customers that [the plaintiff's] products were infringing." Id. at 886.

In reversing the dismissal, the Federal Circuit noted that "other courts have found personal jurisdiction in circumstances quite similar to those [before it]":

> In *Dudnikov*, the plaintiffs sold products on eBay from their home in Colorado. The defendants, believing that one of the plaintiffs' products infringed their copyrights, contacted the plaintiffs by email in Colorado to threaten suit and also contacted eBay in California, which resulted in the plaintiffs' auction being suspended. The plaintiffs then filed a declaratory judgment action in Colorado. The defendants filed a motion to dismiss, arguing that the district court in Colorado lacked jurisdiction over them.

> On appeal from a dismissal order, the Tenth Circuit held that personal jurisdiction was proper in Colorado. In response to the defendants' argument that under *Red Wing Shoe* they should not be subject to personal jurisdiction in Colorado simply for having sent a notice of infringement to the plaintiffs in that state, the court of appeals held *Red Wing Shoe* distinguishable on the ground that the defendants "went well beyond providing notice to plaintiffs of the claimed infringement and seeking settlement; [they] purposefully caused the cancellation of their auction and allegedly threatened their future access to eBay and the viability of their business." Rather than simply sending a cease-and-desist letter to the plaintiffs, the defendants "communicated their complaint to a third party with the intent that the third party take action directly against plaintiffs' business interests, something that thereafter occurred." The court therefore concluded that the exercise of jurisdiction was not protected by the policy consideration underlying *Red Wing Shoe* and that it was not "unfair or unjust" to allow the suit to proceed in Colorado.

. . . In *Bancroft & Masters*, the plaintiff, a California
corporation, registered the Internet domain name
"masters.com." According to the plaintiff's allegations,
defendant Augusta National, which operates the Masters
golf tournament, sent a cease-and-desist letter to the
plaintiff in California and sent a second letter
protesting the plaintiff's use of the domain name to
Network Solutions Inc. ("NSI"), at that time the sole
registrar of Internet domain names. That letter,
according to the plaintiff, was intended to trigger NSI's
dispute resolution procedures with the ultimate purpose
of appropriating the "masters.com" domain name for
itself. The Ninth Circuit held that the defendant's
conduct was sufficient to make it subject to suit in
California.

Campbell Pet, 542 F.3d at 886-87 (bracket in original) (internal

citations omitted).

The Federal Circuit then concluded as follows:

In this case, as in those two cases, the defendants'
conduct went beyond simply informing the plaintiff that
they regarded the plaintiff's products as infringing.
According to the plaintiff's allegations . . . the
defendants took steps to interfere with the plaintiff's
business by enlisting a third party to take action
against the plaintiff. . . . Under these circumstances,
we hold that it would not be contrary to the principles
of the *Red Wing Shoe* line of cases for the district court
to assert jurisdiction over [the defendants] based on
[the plaintiff's] allegations.

Id. at 887 (emphasis in original).

Given the foregoing authority, Defendant Murray's argument

that he "did not interject himself . . . into North Carolina"

(Docket Entry 12 at 10), lacks persuasive force. The record,

viewed in the light most favorable to Plaintiff JHRG (as the Court

must at this stage, see Silent Drive, 326 F.3d at 1201), reflects

that Defendant Murray sought to have Tri Vantage stop its supply of

needed materials to Plaintiff JHRG. (See Docket Entry 17 at 2.)

Such action constitutes interference with Plaintiff JHRG's business

activities in the forum and extra-judicial patent enforcement of the sort that supports a finding of personal jurisdiction under Campbell Pet and the cases cited therein with approval.[6]

Defendant Murray would distinguish Campbell Pet on the ground that "he never sought to limit competition" and has not "undertaken any action in North Carolina related to defense of his patent beyond cease and desist letters[.]" (Docket Entry 21 at 7.) The Campbell Pet Court did state that "[the defendant's] attempts at 'extra-judicial patent enforcement' were targeted at [the plaintiff's] business activities in [the forum] and can fairly be characterized as attempts to limit competition . . . ." Campbell Pet, 542 F.3d at 886. However, the Campbell Pet Court also focused on the fact that "the defendants took steps to interfere with the plaintiff's business . . . ." Id. at 887. Defendant Murray's attempt to avoid the reach of Campbell Pet ignores the potential his communications with Tri Vantage had to "interfere" with Plaintiff JHRG's business activities within the forum and thereby "limit competition."

Additionally, based on Avocent Huntsville, 552 F.3d at 1340, Defendant Murray argued as follows: "Assuming arguendo that Tri Vantage is a middle man for a JHRG product, then it is in effect a customer of JHRG to whom [sic] Murray could rightfully contact without subjecting himself to personal jurisdiction in a foreign

---

[6] "The fact that [those] efforts did not succeed does not affect whether it is fair and just to treat [such] actions directed at [a plaintiff] as sufficient to trigger personal jurisdiction in the forum state." Campbell Pet, 542 F.3d at 887.

forum." (Docket Entry 21 at 8 (emphasis in original).) In the cited case, the Federal Circuit stated that "'a patent owner may, without more, send cease and desist letters to a suspected infringer, or its customers, without being subjected to personal jurisdiction in the suspected infringer's home state.'" Avocent Huntsville, 552 F.3d at 1340 (quoting Beckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1362 (Fed. Cir. 2006)). The record, however, does not reflect that Tri Vantage was a "middle man" or "customer" for Plaintiff JHRG; to the contrary, it shows that Tri Vantage was a supplier for Plaintiff JHRG. (See Docket Entry 17 at 2.)

Defendant Murray also raised the following related contentions: "[Defendant] Murray and [Plaintiff] JHRG are not engaged in a dispute where a sole entity supplies the necessary ingredient[;]" Tri Vantage is not "an indispensable supplier[;]" and Tri Vantage is "one of hundreds, if not thousands, of suppliers[.]" (Docket Entry 21 at 9.) These assertions represent different forms of a claim that a defendant may engage in "extra-judicial enforcement" by interfering with a plaintiff's supplier(s) without triggering personal jurisdiction if alternative suppliers exist. Nothing in the language of Campbell Pet or the cases cited therein support such a conclusion. Moreover, Defendant Murray failed both to cite any authority to justify this position and to identify a supplier who could have provided proper substitutes for Tri Vantage's Sunbrella® fabric. (See id.)

Next, Defendant Murray contended that the operations of Glen Raven Technical Fabrics, LLC ("Glen Raven Technical") and John Boyle & Company, Incorporated ("Boyle"), and documents regarding those companies, support his motion to dismiss; more specifically, he asserted that such materials show a corporate affiliation between Tri-Vantage and Plaintiff JHRG related to the allegedly infringing product, such that any communications Defendant Murray had with Tri-Vantage would not represent efforts to enlist a third-party's assistance against Plaintiff JHRG, but rather communications with Plaintiff JHRG writ large. (See id. at 5-8.)

In this regard, Defendant Murray filed a copy of an internet article from "ConsumerReports.org" titled "International Builders' Show Product Preview: Storm-A-Rest Hurricane-Protection System" dated February 13, 2008, which stated in pertinent part: "John Boyle & Company's Storm-A-Rest panels promise to fend off the pounding winds, torrential rain, and flying debris that define Mother Nature at her worst. . . . Panels for standard size windows cost about $20 to $22 per square foot without the trim; custom sizes are also available." (Docket Entry 21, Ex. B-3 at 1.) In a section titled "Comments," below the article, a February 15, 2008, entry states in its entirety:

> YOUR LANGUAGE IN THE VIDIO [SIC] IS CORRECT THE COST PER SQ. FT. IS $20 TO $22 BUT THE WRITTEN REPORT ABOVE IS NOT CORRECT. IT IS NOT $20 TO $22 EACH. A CORRECTION IS REQUESTED.
>
> REGARDS,
>
> JOHN E. HOLLAND
> PRESIDENT, JHRG LLC

MANUFACTURER, PATENER [SIC] AND DESIGNER OF STORM-A-REST
800-849-4997

(Docket Entry 21, Ex. B-3 at 2.) Defendant Murray also tendered a document titled SEBC Virtual Trade Show Florida Home Builders Association, denoting a 2010 copyright owned by the Florida Home Builders Association, which states in pertinent part: "Storm-A-Rest (TM) is a groundbreaking hurricane protection system from John Boyle & Company which offers benefits and features no other product on the market can match." (Docket Entry 21, Ex. B-2 at 1.)

From the foregoing documents, Defendant Murray apparently deduces that Plaintiff JHRG and Boyle have some affiliation. Building upon that inference, Defendant Murray then cites a document showing that, on August 18, 2008, "Glen Raven Technical" signed an "Articles of Merger" with Boyle. (<u>See</u> Docket Entry 21, Ex. B-1 at 1.) As previously noted, Plaintiff JHRG's President indicated that Tri Vantage has some connection to an entity known as "Glen Raven, Inc." (Docket Entry 17 at 2.) According to Defendant Murray, that fact – combined with the cited documents – supports an inference that he reasonably perceived Tri Vantage not as a third-party supplier to Plaintiff JHRG, but rather – through a connection with Boyle and a Glen Raven entity – as a corporate affiliate of Plaintiff JHRG with a joint ownership interest in the allegedly infringing product. (<u>See</u> Docket Entry 21 at 5-8.)

The evidence before the Court, however, reflects that, in his contact with Tri Vantage, Defendant Murray took the position that Tri Vantage was selling materials to Plaintiff JHRG for use in the

infringing product, not that Tri Vantage jointly owned the allegedly infringing product. (See Docket Entry 17 at 2.) Nor does the documentary evidence submitted by Defendant Murray establish that Tri Vantage in fact had an ownership interest in the allegedly infringing product. Instead, the documents in question fail to establish any clear picture of what, if any, corporate connection existed between Tri Vantage and Plaintiff JHRG and/or what, if any, ownership interest Tri Vantage had in the allegedly infringing product. Taking the evidence in the light most favorable to Plaintiff JHRG, as the Court must at this stage, see Silent Drive, 326 F.3d at 1201, no basis exists to find that Defendant Murray's communications with Tri Vantage effectively constituted communications with Plaintiff JHRG or that Defendant Murray perceived them as such.

As a final matter, in his brief in support of his instant motion to dismiss, Defendant Murray has asserted in the most general of terms that defending an action in this forum would impose upon him "a great burden." (Docket Entry 12 at 10.) In his affidavit, Defendant Murray offered only a slightly more detailed contention in this regard: "As a Florida resident, defending this action in North Carolina would place a great burden on [him], especially in light of the substantial contacts of Plaintiff [JHRG] with Florida." (Docket Entry 7 at 4.)

The Federal Circuit has recognized that "the burden on the defendant" represents a factor relevant to the reasonableness prong of the specific jurisdiction test. See Avocent Huntsville, 552

F.3d at 1331. However, the Federal Circuit also has observed that modern forms of communication and means of transportation mitigate the geographically-related burden on a defendant arising from litigation outside its home state. See <u>Beverly Hills Fan</u>, 21 F.3d at 1569 ("[P]rogress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." (internal quotation marks omitted)). Moreover, the distance between the Middle District of North Carolina and Defendant Murray's home in Jacksonville, Florida, is not particularly great and thus the logistical burden he will face in litigating in this Court is not particularly great. See generally <u>Panterra Engineered Plastics, Inc. v. Transportation SYS. Solutions, LLC</u>, 455 F. Supp. 2d 104, 111 (D. Conn. 2006) (ruling that, although Connecticut court's "exercise of jurisdiction [over defendant located in North Carolina] will geographically inconvenience and thereby burden the defendant somewhat, the distance and travel logistics are not great").[7] Finally, although Plaintiff JHRG's contacts with Florida might support an inference that litigation in Florida would not unreasonably burden Plaintiff JHRG, that fact fails to establish the converse, i.e., that litigating in North Carolina would unreasonably burden Defendant Murray.

---

[7] Online mapping services confirmed that the highway distances between any location in North Carolina and the federal courthouses in Connecticut significantly exceed the highway distances between Jacksonville, Florida, and the federal courthouses in the Middle District of North Carolina. Similarly, queries of travel websites revealed that the cost and availability of air travel between Jacksonville and the Middle District of North Carolina compares favorably to the cost and availability of air travel between North Carolina and Connecticut.

Under these circumstances, the exercise of specific jurisdiction over Defendant Murray by this Court comports with fair play and substantial justice.

### c.  Summary

Plaintiff JHRG has made a prima facie showing of specific jurisdiction over Defendant Murray.[8]  First, Defendant Murray's cease-and-desist letter(s) to Plaintiff JHRG constituted activity "purposely directed" by Defendant Murray into this forum and the instant declaratory judgment action "arises out of" said cease-and-desist letter(s).  Second, the combination of the cease-and-desist letter(s) with the evidence of Defendant Murray's extra-judicial enforcement activities in seeking to dissuade Tri Vantage from supplying Plaintiff JHRG satisfies the reasonableness prong of the specific jurisdiction test.  Finally, no basis exists to find that litigation in this forum would impose a burden sufficient to make this Court's exercise of personal jurisdiction over Defendant Murray unreasonable.  Defendant Murray's motion to dismiss (Docket Entry 11) therefore should be denied.

### C.  Defendant StormWatch's Motion to Dismiss

Defendant StormWatch filed a motion to dismiss pursuant to: Rule 12(b)(1) for lack of subject matter jurisdiction; Rule 12(b)(2) for lack of personal jurisdiction; and Rule 12(b)(3) for

---

[8] The Court therefore need not address Plaintiff JHRG's arguments regarding jurisdictional discovery or transfer, pursuant to 28 U.S.C. § 1406(a) (see Docket Entry 16 at 17-18).  Plaintiff JHRG, however, retains the ultimate burden of proving the existence of personal jurisdiction by a preponderance of the evidence.  See Campbell Pet, 542 F.3d at 889.

improper venue. (Docket Entry 14 at 1.) Plaintiff JHRG subsequently gave notice that it voluntarily dismissed its claims against Defendant StormWatch (Docket Entry 24 at 1) thus rendering Defendant StormWatch's instant motion to dismiss moot. Accordingly, Defendant StormWatch's instant motion to dismiss (Docket Entry 14) should be denied as moot.

## III. CONCLUSION

Rule 12(f) does not provide a basis to strike affidavits or a declaration, the exercise of specific jurisdiction over Defendant Murray is appropriate, and Plaintiff JHRG has voluntarily dismissed its claims against Defendant StormWatch.

**IT IS THEREFORE ORDERED** that Defendant Murray's Motion to Strike (Docket Entry 22) is **DENIED.**

**IT IS FURTHER ORDERED** that the caption of the case shall be restyled as follows: JHRG LLC, Plaintiff, v. MICHAEL MURRAY, Defendant.

**IT IS RECOMMENDED** that Defendant Murray's Amended Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry 11) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant StormWatch's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction and Improper Venue (Docket Entry 14) be **DENIED AS MOOT.**

/s/ L. Patrick Auld
L. Patrick Auld
United States Magistrate Judge

July 26, 2011